IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| ALMAZ NEZIROVIC, | ) | | |
| | ) | | |
| Petitioner | ) | Civil Action No. 7:13cv428 | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| GERALD S. HOLT, | ) | By: | Michael F. Urbanski |
| *United States Marshal, Western District of Virginia* | ) | | **United States District Judge** |
| | ) | | |
| and | ) | | |
| | ) | | |
| BOBBY D. RUSSELL, | ) | | |
| *Superintendent, Western Virginia Regional Jail* | ) | | |
| | ) | | |
| Respondents | ) | | |

## MEMORANDUM OPINION

Petitioner Almaz Nezirovic seeks his immediate release from detention pending the outcome of the present habeas corpus proceeding. Nezirovic asserts that he poses no risk of flight and that special circumstances exist requiring his release on bond. Upon consideration of the appropriate legal standard, the entire record in this case and the extradition proceeding, In re Extradition of Almaz Nezirovic, No. 7:12cv039, the court is compelled to conclude that Nezirovic has failed to meet his burden of establishing, by clear and convincing evidence, that special circumstances exist allowing bond in this case. As such, Nezirovic's application for bond pending habeas review is **DENIED**.

### I.

Nezirovic's bond application is the fifth time in the past two years that he has sought release on bond, albeit in different procedural settings. A review of this history is necessary to place the pending application in proper context.

Nezirovic is a native and citizen of Bosnia and Herzegovina ("Bosnia"). In 1997, Nezirovic entered the United States as a refugee. In so doing, he completed certain immigration forms seeking admission to and permanent residence in this country. Nezirovic applied for naturalized citizenship in 2004 and was interviewed in connection with that application in 2006. Over the last 16 years, Nezirovic has lived and worked in Roanoke, Virginia without incident.

A federal grand jury issued an indictment on June 9, 2011 charging Nezirovic with fraudulently procuring permanent residence in the United States and making false statements on his application for citizenship. The indictment charges that Nezirovic failed to disclose that, while serving with the Croatian Defense Council (HVO), he assaulted and inhumanely treated Serb civilians detained at the Rabic internment camp. United States v. Almaz Nezirovic, No. 7:11cr0047, Dkt. # 3. Nezirovic was released on bond on June 28, 2011, and satisfactorily met the terms and conditions of his bond until his arrest on the underlying extradition complaint on June 17, 2012. The criminal trial has been continued to May 12, 2014.

In the extradition complaint filed on July 16, 2012, the United States asserts that Bosnia seeks return of Nezirovic to stand trial for alleged war crimes, including torture and inhumane treatment of Serbian civilians in his custody while he served as a guard in the Rabic internment camp in 1992. Magistrate Judge Robert S. Ballou denied Nezirovic's request for bond at his initial appearance on the date of his arrest. Nezirovic renewed his request, and a bond hearing was held on October 10, 2012. On November 19, 2012, the magistrate judge denied Nezirovic's renewed request, ruling that Nezirovic failed to meet his burden of showing that special circumstances existed warranting bond and that he is not a risk of flight. On September 16, 2013, the magistrate judge certified Nezirovic as subject to extradition under 18 U.S.C. § 3184.

On September 18, 2013, the magistrate judge denied Nezirovic's request to reconsider the denial of his application for bond.

That same day, September 18, 2013, Nezirovic filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 and on October 7, 2013 again requested that he be released on bond. An evidentiary hearing was held on October 8, 2013 followed by supplemental briefing. Nezirovic argues that special circumstances justify his release on bond, including his exemplary conduct on bond during the pendency of the criminal case, the deterioration in the condition of his health while incarcerated, the passage of more than twenty years since the alleged war crimes, the delay in these proceedings, and the complexity of the legal issues. The government counters that the extradition statute affords the court no authority to release Nezirovic on bond following certification of his extradition, and, in the alternative, that he has not met his burden of establishing special circumstances for a bond.

## II.

Bail is not ordinarily available in extradition cases "due to the foreign relations interest of the United States in successfully returning persons subject to criminal prosecution to the requesting country." In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1214 (D. Nev. 1993) (citations omitted); see also In re Extradition of Russell, 805 F.2d 1215, 1216 (5th Cir. 1986) (holding that there is a presumption against bail in extradition cases). Since extradition cases are not criminal in nature, the provisions of the Bail Reform Act do not apply. Kamrin v. United States, 725 F.2d 1225, 1227-1228 (9th Cir.), cert. denied, 469 U.S. 817 (1984); In re Extradition of Mironescu, 296 F. Supp. 2d 632, 634 (M.D.N.C. 2003). The legal standards which govern release or detention of an extraditee are governed by federal case law. In re Extradition of Maniero, 950 F. Supp. 290, 293 (S.D. Cal. 1996).

In 1903, the Supreme Court established the standard for bail in extradition cases which remains applicable today: bail is available only where "special circumstances" are shown. Wright v. Henkel, 190 U.S. 40, 63 (1903). "There is a presumption against bail in extradition cases and only 'special circumstances' justify release on bail." United States v. Kin-Hong, 83 F.3d 523, 524 (1st Cir. 1996) (collecting cases). In addition to showing special circumstances, the extraditee must also show that he will not flee or pose a danger to any other person or to the community. In re Extradition of Nacif–Borge, 829 F. Supp. at 1215.

The government argues that the court has no authority to release petitioner on bond following certification of extradition by the magistrate judge. The government focuses on the final portion of the extradition statute, which indicates that after certification, the magistrate judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made." 18 U.S.C. § 3184. "The United States takes the position that the plain language of the extradition statutes anticipates that there is no opportunity for bail after certification of an extradition request." Mem. of Law Opposing Post-Certification Bail, Dkt. # 10, at 2.

The government's argument has not fared well in the federal courts. First, many courts, including three circuit courts of appeals, have addressed the issue of bond in international extradition cases following certification. These decisions, applying the Wright v. Henkel special circumstances standard, contain no hint that a federal court lacks the power to issue a bond post-certification. See Salerno v. United States, 878 F. 2d 317 (9th Cir. 1989); Beaulieu v. Hartigan, 554 F.2d 1 (1st Cir. 1977); Yau-Leung v. Soscia, 649 F.2d 914 (2d Cir.), cert. denied, 454 U.S. 971 (1981). "[The government] urges the court to reject these cases' application of the special circumstances rule to post-certification cases as dicta. However, the cases rest on sound

4

application of Wright and subsequent federal common law. The court therefore declines this invitation." Garcia v. Benov, No. CV 08-07719 MMM, 2009 WL 6498194, *5 n.23 (C.D. Cal. April 13, 2009).

Second, the government's argument that the court lacks power to grant bail after certification has been expressly repudiated by several federal courts. See In re Extradition of Hilton, No. 13-7043-JCB, 2013 WL 3282864, *3 (D. Mass. June 26, 2013) ("Accordingly, several courts have found that they have the authority to grant release after the issuance of a certificate of extradictability and during the pendency of habeas proceedings."); In re Extradition of Kapoor, No. 11-M-456 (RML), 2012 WL 2374195, *3 (E.D.N.Y. June 22, 2012) (Courts "have not drawn any distinction between pre- and post-certification bail applications and have time and again considered bail requests after a judicial finding of extradictability. . . . In short, it is well-settled that although there is a presumption against granting bail in an international extradition case, an extraditee may be granted bail – both before or after bail certification of extradictability – upon a showing of special circumstances."); Wroclawski v. United States, 634 F. Supp. 2d 1003, 1005-06 (D. Az. 2009) ("And while [Wright v.] Henkel arose during the precertification stage of extradition, subsequent case law has made clear that the special circumstances test is applicable in both the pre- and post-certification stages of extradition. . . . Because the doctrine of special circumstances is well-settled, the Court is satisfied that it possesses the authority to grant Petitioner's release during the pendency of this habeas petition."); Garcia v. Benov, 2009 WL 6498194 at *5 n.23 ("The court rejects respondent's argument that the courts are without power to grant bail following certification of a request for extradition."); In re Extradition of Harshbarger, No. 5:08-MJ-00109, 2009 WL 702925, at *3

(M.D. Pa. March 12, 2009) ("Nor does this Court lack authority . . . to offer bail, even after making a finding in favor of extradition.").

Third, the government cites only one decision adopting its statutory construction argument. However, in that case, the extraditee did not contest the point, and the court did not squarely address the issue. Thus, its precedential value is negligible. In re Extradition of Markey, No. 3:09mj75, 2010 WL 610975, *4 (N.D. Ind. Feb. 18, 2010) (Citing only the language of § 3184 and the agreement of the parties, the court concluded that it "has no authority to release Markey after it issues the certificate of extradictability.").

Following the plain weight of authority, therefore, the court concludes that Wright v. Henkel allows a court to release an extraditee on bond pending habeas review following certification of the extradition by a magistrate judge.

## III.

"A person subject to international extradition may overcome the presumption against bail by presenting clear and convincing evidence demonstrating 'special circumstances' justifying release pending extradition proceedings and that the person will not flee or pose a danger to any other person or to the community." In re Extradition of Nacif–Borge, 829 F. Supp. 1210, 1215 (D. Nev. 1993).[1] As Judge Learned Hand explained, this exception "should be exercised only in the most pressing circumstances, and when the requirements of justice are absolutely

---

[1] Nezirovic bears the burden of establishing the existence of special circumstances. See, e.g., In re Extradition of Heriberto Garcia, 761 F. Supp. 2d 468, 474 (S.D. Tex. 2010); United States v. Taitz, 130 F.R.D. 442, 444 (S.D. Cal. 1990). Many courts, mindful of the presumption against bond in international extradition cases, have applied a clear and convincing evidence standard. See, e.g., In re Extradition of Heriberto Garcia, 761 F. Supp. 2d at 482; United States v. Castaneda-Castillo, 739 F. Supp. 2d 49, 55 (D. Mass. 2010); United States v. Ranmath, 533 F. Supp. 2d 662, 666 (E.D. Tex. 2008); In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 735 (W.D. La. 1999); In re Extradition of Maniero, 950 F. Supp. 290, 294 (S.D. Cal. 1996); In re Extradition of Nacif–Borge, 829 F. Supp. 1210, 1215 (D. Nev. 1993). A minority of cases employ the preponderance of the evidence standard. See Garcia v. Benov, CV 08-07719 MMM CWX, 2009 WL 6498194, at *3 (C.D. Cal. Apr. 13, 2009); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1036 n.4 (C.D. Cal. 2006). As the Fourth Circuit Court of Appeals has not spoken to the issue, the court will follow the majority rule and apply the clear and convincing evidence standard.

peremptory[.]" In re Mitchell, 171 F. 289, 290 (S.D.N.Y.1909). This standard of "special circumstances" for release on bail for persons involved in a foreign extradition proceeding "is a more demanding standard that for ordinary accused criminals awaiting trial." Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d Cir.) (citations omitted), cert. denied, 454 U.S. 971 (1981). Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition. In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir.1992) (citations omitted). "Under the special circumstances standard, admission to bail 'should be an unusual and extraordinary thing,' and courts should exercise the power sparingly." LoDuca v. United States, No. CV-95-713 (DGT), 1995 WL 428636, *15 (E.D. N.Y. July 7, 1995) (quoting United States ex rel. McNamara v. Henkel, 46 F.2d 84, 84 (S.D. N.Y. 1912) (other citation omitted)).

"The term 'special circumstances' has never been precisely defined and courts have addressed on a case by case basis particularly sufficient circumstances that would reverse the strong presumption against bail." In re Extradition of Maniero, 950 F. Supp. at 294; see also In re Extradition of Heriberto Garcia, 761 F. Supp. 2d at 471-72; In re Extradition of Molnar, 182 F. Supp. 2d 684, 688 (N.D. Ill. 2002); In re Extradition of Nacif-Borge, 829 F. Supp. at 1213-14. "Special circumstances include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." Salerno v. United States, 878 F. 2d 317, 317 (9th Cir. 1989). "Although most cases focus on a single special circumstance, courts are now recognizing that the cumulation of several factors may constitute special circumstances that justify bail pending extradition proceedings." In re Extradition of Nacif-Borge, 829 F. Supp. at 1216 (citing Taitz, 130 F.R.D. 442).

# IV.

Nezirovic asserts that the facts of this case, considered in combination, constitute special circumstances justifying his release on bond, focusing on the following points:

> (1) He is not a flight risk, as evidence by his prior success on pre-trial release for more than one year; (2) he is not a danger to the community; (3) He has been a law-abiding member of the Roanoke Community since he and his family came here in 1997; (4) He has serious health problems, some of which pre-dated his incarceration, and others which have appeared or worsened since his incarceration; (5) the crimes of which he is accused allegedly occurred more than 20 years ago; (6) This case raises complex legal issues that have already taken more than one year to finish the first stage of proceedings, and habeas proceedings and any appeal therefrom is likely to take at least another year.

Br. in Supp. of Bond, Dkt. # 17, at 8. For its part, the government, focusing on the strong presumption against bail in foreign extradition cases and Nezirovic's clear and convincing evidence burden, argues that Nezirovic's health concerns do not rise to the level of special circumstances and that he poses a significant risk of flight.

Nezirovic contends that three special circumstances exist in this case justifying his release on bond. First, he argues that he has serious health problems. Second, he argues that the war crimes charged are more than twenty years old. Third, he argues that this case raises complex legal issues which may take another year to sort out.[2]

---

[2] Nezirovic's other points concern traditional bail considerations of risk of flight and danger to the community, which, the case law makes clear, are issues independent of the special circumstances calculus. See Salerno v. United States, 878 F. 2d 317, 318 (9th Cir. 1989) ("Salerno . . . contends that because he is not a flight risk, he is entitled to bail pending the appeal of the denial of his petition for a writ of habeas corpus. That is not the criteria for release in an extradition case." (citation omitted)); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1035 (C.D. Cal. 2006) ("The party seeking release on bail in an international extradition case also must demonstrate that there is no risk he will fail to appear for further extradition proceedings and that he is not a danger to the community, but those factors are not special circumstances which alone justify release on bail."). As the court noted in In re Extradition of Nacif-Borge, 829 F. Supp. at 1215-16, "[n]o precise structure for the legal analysis of applications for bail pending extradition emerges from the case law. Some courts first consider flight risk and then progress to special circumstances, while other courts begin with special circumstances and then consider risk of flight. Given that special circumstances are absolutely required for bail, and that risk of flight is not determinative, the best approach first explores special circumstances, and then, only after a finding of special circumstances, examines risk of flight." As this analytical structure makes sense, it will be employed here.

## A.

Nezirovic argues that he suffers from back pain, anxiety and post traumatic stress disorder which is exacerbated by his incarceration. Petitioner's son, Alan Nezirovic, testified that his father's mental state has deteriorated drastically and that he is not the same person he was prior to his incarceration. Alan Nezirovic testified that his father appears hopeless, tired, and suicidal. He also complains of pain radiating from his back.

Petitioner Nezirovic testified that he is not sleeping in jail due to numbness and tingling in his legs, back pain and nightmares from the war in Bosnia. Nezirovic testified that he does not trust the jail medical staff and has disagreed with their diagnoses and proposed treatment modalities. For example, Nezirovic declined steroid treatment and quit taking the neurontin prescribed for him for his legs. Nezirovic likewise decided to stop treating with the jail psychiatrist and stated the mental health counselor was "trying to wash my brain." Nezirovic did not testify as to any thoughts of suicide; rather his complaints focused on being tired, having numb and tingling legs and back pain.

The government called Lindsay Buschor, director of nursing at the Western Virginia Regional Jail, who described the medical treatment provided to Nezirovic. Buschor testified as to the variety of medications prescribed for Nezirovic and indicated that he has never been denied medication or treatment for his various complaints. Buschor testified that mental health counselors are available to Nezirovic with whom he could develop a relationship. Buschor recounted the numerous times over the past year that Nezirovic has refused to be seen by mental health professionals. Buschor testified that she believes that the jail can take care of Nezirovic's health needs, including his back pain, leg concerns and mental health issues. Buschor testified

that in addition to resources available inside the jail, Nezirovic can be referred to outside specialists.

The government introduced Nezirovic's treatment records, both from the jail and before his incarceration. Dkt. # 13-4. Review of these records indicates that Nezirovic received medical attention to his health complaints at the jail, although he did not always attend scheduled appointments. The records reflect no potentially life threatening conditions. The most recent medical records reflect that Nezirovic "reported that he was doing well," Dkt. # 13-4, at 2, and as being "hopeful and optimistic at this time." Dkt. # 13-4, at 3. To be sure, other medical records reflect Nezirovic's frustration and agitation with his situation, including threatening to stage a hunger strike, Dkt. # 13-4, at 7, but no records reflect any intent to harm himself or others. Instead, the reports consistently reflect that Nezirovic is a low suicide risk. Dkt. # 13-4, at 2-4, 6, 7, 10.

Nezirovic's health concerns do not establish, by clear and convincing evidence, a special circumstance warranting bail. While the court does not question the seriousness of Nezirovic's medical conditions, "they do not appear to be life-threatening, or so complex as to be beyond the capacity of federal authorities to manage while he is in their custody." In re Extradition of Heriberto Garcia, 761 F. Supp. 2d 468, 481-82 (S.D. Tex. 2010) (back pain and growth on back of neck). As in In re Extradition of Heriberto Garcia, the medical evidence presented at the bond hearing does not convince the court that Nezirovic's condition is either life-threatening or so serious that his medical needs cannot be accommodated by the jail's medical staff while in custody. Review of the medical records establishes that Nezirovic has regularly received medical treatment and medications for his complaints, and, on occasion, has refused medications and treatment by mental health professionals. Importantly, while understandably frustrated with

his present situation, Nezirovic has consistently denied any suicidal ideations. As such, Nezirovic's health condition does not rise to the level of a special circumstance. See also United States v. Nolan, No. 08-M-97, 2009 WL 4544699, at *3 (N.D. Ill. Dec. 1, 2009) ("Accordingly, while we are sympathetic to counsel's arguments regarding the deterioration of Nolan's health [stemming from the serious and dangerous mental health consequences of extended periods of solitary confinement'], we do not find that it is a special circumstance that warrants his release."); Bolanos v. Avila, No. 09-1208 (JLL), 2009 WL 3151328, at *4 (D.N.J. Sept. 24, 2009) ("Bolanos's application for bail alleges that she can obtain better health care for her cancer in a private medical setting than she can obtain in prison. The mere availability of a better, private form of medical treatment is not sufficient to overcome the presumption against bail."); United States v. Latulippe, No. 08-mj-59-1-JM, 2008 WL 2704230, at *1 (D.N.H. July 3, 2008) (Bail denied pending extradition of cancer patient despite argument that immunotherapy treatment not available in custody. "The fact that a particular treatment, available in some places, is not available to Mr. Latulippe during his detention does not create a special circumstance that would exempt him from the presumption of detention in this instance."); In re Extradition of Huerta, No. H-08-342M, 2008 WL 2557514 (S.D. Tex. June 23, 2008) ("While Huerta's medical conditions are unquestionably serious, they are not life-threatening, nor are they so novel or complex as to be beyond the capacity of federal authorities to manage while he is in their custody."); In re Extradition of Kim, No. CV 04-3886-ABC (PLA), 2004 WL 5782517, *5 (C.D. Cal. July 1, 2004) ("Thus, the Court finds that Kim's back condition can be addressed adequately while incarcerated, and his ailments do not require immediate attention, unavailable in custody, to prevent the deterioration of his health. Kim's condition is not a "health emergency" which can only be addressed while on bail. While Kim's health problems "may,

indeed, be serious," they are not a special circumstance, as they are not unique and can be handled in custody." (internal citation omitted)); In re Extradition of Rouvier, 839 F. Supp. 537, 541-42 (N.D. Ill. 1993) (Potentially serious heart condition controlled with daily medication provided in detention "is not serious enough to constitute a special circumstance."); In re Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1993) ("Special circumstances might also be found if a health emergency could be established which could only be treated while a detainee was on bail. . . . Nothing convinces me that the Byrnes' health problems are unique or cannot be dealt with while in custody."); In re Extradition of Nacif-Borge, 829 F. Supp. at 1216-17 ("Although Nacif's health condition [one kidney] concerns the court, his condition is not debilitating, and is apparently easily controlled.").

While serious, Nezirovic's anxiety, post-traumatic stress disorder, back pain, leg numbness and other health issues are not life threatening. Review of his medical records and the testimony of jail medical personnel establishes that the jail has responded to his medical complaints and is fully capable of attending to his health concerns. Consistent with the case law on this issue, the court does not believe that Nezirovic's health condition constitutes a special circumstance warranting his release on bail.

**B.**

Nezirovic argues that the passage of more than two decades since the alleged war crimes were committed is a special circumstance authorizing bond in this case. A number of other courts have considered similar arguments in international extradition proceedings. This issue is often referred to as being one of diplomatic necessity or urgency.

For example, in Wroclawski v. United States, 634 F. Supp. 2d 1003, 1008 (D. Ariz. 2009), Wroclawski was charged in Poland with bank fraud and theft in 1994, yet the Polish

government did not seek extradition until 2006, despite the fact that he lived openly in the United States and made no efforts to hide his whereabouts. No explanation was given for this twelve year delay, and the court found it to be a special circumstance.

Likewise, in In re Extradition of Chapman, 459 F. Supp. 2d 1024 (D. Haw. 2006), the court found a three year delay by Mexico in bringing extradition proceedings to be a special circumstance. The court explained that "[t]here is a lack of any diplomatic necessity for denying bail. Mexico waited three years before bringing extradition proceedings against the Respondents, during which the Respondents were living openly and notoriously, aware of the charges against them in Mexico." Id. at 1027.

On the other hand, in United States v. Leitner, 784 F.2d 159 (2d Cir. 1986), the Second Circuit Court of Appeals affirmed the denial of bond to a Israeli charged with various acts of violence against Arabs several years before. Focusing on the fact that the crimes alleged included acts of terrorism, the Second Circuit concluded that "'urgency' is not merely temporal in nature. Rather, the term involves other considerations including importance to the country seeking extradition and foreign policy concerns of the United States." Id. at 161.[3] The court reasoned that even though the treaty parties moved slowly in arresting Leitner, the interest in producing extradictable persons is magnified in the case of terrorism. The district court concluded that Leitner's flight from Israel to the United States, "the seriousness of the crimes and the interests of the two governments in extradition weight strongly against bail." Id. The Second Circuit agreed that the case presented no special circumstances.

---

[3] Other courts have held that the issue of diplomatic urgency is one in which the government is entitled to substantial deference given its foreign affairs interest in the matter. See, e.g., In re Extradition of Timothy Garcia, 615 F. Supp. 2d 162, 175 (S.D.N.Y. 2009) ("In addition, by processing the Philippines' request, the United States evidently has expressed its agreement that there has been a showing of urgency sufficient to justify the issuance of a provisional arrest warrant. This is a foreign policy decision entitled to deference."): United States v. Messina, 566 F. Supp. 740, 745 (E.D.N.Y. 1983) ("The court . . . accords considerable weight to the judgment of the United States, given its foreign affairs interest in the matter.").

13

The extradition request in this case resembles, to a superficial extent, the extradition request in United States v. Castaneda-Castillo, 739 F. Supp. 2d 49 (D. Mass. 2010), a case cited by Nezirovic. In that case, Peru sought extradition of Castaneda-Castillo in 2010 for crimes associated with a civilian massacre during the Shining Path uprising in 1985. Castaneda-Castillo, a Peruvian military officer during the uprising, came to the United States in 1991. Since 1993, Castaneda-Castillo had been pursuing an asylum petition. Focusing first on the lack of diplomatic necessity for detention, the district court found special circumstances to exist and released Castaneda-Castillo on bond. The court noted that "[t]he most compelling argument in favor of release is the fact that Peru has obviously not actively pursued this twenty-five year old charge, thereby resulting in a very lengthy delay." Id. at 57-58. To this point, Nezirovic's bond request and that of Castaneda-Castillo bear some similarity in that the alleged crimes arose out of an insurrection which occurred more than twenty years prior to the extradition request. But there the similarities end. As is apparent from the court's opinion, the principal reason that Castaneda-Castillo was granted bond is that the evidence showed that he "was not a principal participant in the events in question and, perhaps more importantly, that Peru did not consider him to be a principal participant." Id. at 58. The court noted that "Castaneda-Castillo is charged with kidnapping an individual everyone agrees he had no contact with, and there is some indication that Castaneda-Castillo is being charged with direct participation in the massacre, despite the agreement by all that neither he nor his troops were directly involved." Id. at 60. Here, in contrast, the magistrate judge found that "Nezirovic does not contest that the complaint states sufficient facts to support a finding of probable cause that he committed the acts charged by Bosnia. Indeed, the record supports an independent finding of probable cause to believe that Nezirovic committed the crimes charged." In re Extradition of Almaz Nezirovic, No. 7:12mc39,

14

Dkt. # 48, at 12. Based on the record before the court, the Castaneda-Castillo decision does not compel Nezirovic's release.

On balance, the court finds the Second Circuit's decision in Leitner to be persuasive. There, as here, the crimes charged are extremely serious. In Leitner, the crimes charged included acts of violence and terrorism; here, they are war crimes. Although it has taken many years for Nezirovic's extradition request to reach this stage, the nature of the war crimes charged in this case, including torture and physical abuse, compels the conclusion that Bosnia's delay in making the extradition request does not rise to the level of a special circumstance warranting Nezirovic's release on bond in this case.

## C.

Finally, Nezirovic argues that this habeas proceeding presents complex legal issues which will unduly delay the extradition process. The court disagrees. In his habeas petition, Nezirovic raises two points, the statute of limitations and the political offense doctrine, each of which present questions of law. The court has established a briefing schedule, set a hearing date for February 7, 2014, and expects to rule promptly after that date. As such, the court does not believe that this case will be unduly delayed such that Nezirovic should be released on bond at this point.

As the First Circuit Court of Appeals noted in United States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996), "the normal passage of time inherent in the litigation process" does not constitute a special circumstance. There, the court noted that "Lui has made an insufficient showing that the issues he raises are so complex that the resolution of the extradition issue will be inevitably and exceedingly protracted." Id.[4] Further, "the discomfiture of jail, and even

---

[4] This is not a case like United States v. Taitz, 130 F.R.D. 442 (S.D. Cal. 1990), in which the court found delay in the proceedings to be a special circumstance. There, the extradition request concerned 434 counts of fraud and tax

15

applicant's arguable acceptability as a tolerable bail risk are not special circumstances." United States v. Williams, 611. F.2d 914, 915 (1st Cir. 1979) (internal citations omitted).[5] In short, the court does not believe that there will be any unusual delay in this case going forward rising to the level of a special circumstance.

Even considered together, the court finds that the issues of Nezirovic's health, delay by Bosnia in requesting extradition and the time required to conduct the extradition and habeas proceedings in the United States do not constitute a special circumstance warranting his release on bail.[6]

## V.

Nezirovic has not established the existence of any special circumstances warranting his admission to bail in this case. For the sake of the record, the court considers the risk that Nezirovic would flee if released on bail to be slight. Nezirovic has no criminal history in the United States, he has lived and worked in the Roanoke, Virginia area for many years, and he successfully complied with the terms of his federal bond for a year before the request for extradition was made. Nonetheless, in the extradition context, the fact that Nezirovic may not flee is not a basis for the granting of bail. See United States v. Leitner, 784 F.2d 159, 161 (2d Cir. 1986) (affirming denial of bail despite the proffer of a bond because "[e]ven a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance); Borodin

---

evasion and substantial questions existed as to whether the charged offenses were extradictable offenses under the treaty. Id. at 445-46.

[5] A few courts have granted bail in international extradition cases where the delays were attributable to underlying problems with the charges in the requesting state. See, e.g., United States v. Castaneda-Castillo, 739 F. Supp. 2d 49, 60 (D. Mass. 2010) (finding that evidence adduced at immigration proceedings raised doubts as to substantive merits of the extradition request); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1036-37 (C.D. Cal. 2006) ("During the entire period [Santos was held in federal custody,] the arrest warrants serving as the basis for Mexico's extradition requests have been under a cloud."); In re Extradition of Morales, 906 F. Supp. 1368, 1375 (S.D. Ca. 1995) (noting the delay by Mexican authorities in correcting flaw in underlying charging documents). There is no indication that similar issues are present here.

[6] Although the court believes that Nezirovic's burden of proof to overcome the presumption against bail is by clear and convincing evidence, the court concludes that he would not even satisfy the lesser preponderance of the evidence standard utilized by a small minority of federal district courts.

v. Ashcroft, 136 F.Supp.2d 125, 130 (E.D.N.Y.2001) ("Absence of risk of flight is not a legally cognizable 'special circumstance' justifying release from bail.") (citing cases); In re Extradition of Ernst, No. 97 CRIM.MISC.1PG.22, 1998 WL 51130, at *13 (S.D.N.Y. Feb. 5, 1998) (low risk of flight is not a special circumstance).

Accordingly, Nezirovic's application for bail pending habeas review is **DENIED**. An appropriate Order will be entered.

Entered: November 27, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge